# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **JEREMY PINSON,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:09-cv-02379-CLS-HGD |
| | ) |
| **CONSTANCE REESE, et al.,** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiff is an inmate at the Federal Correctional Institution in Talladega, Alabama. Along with his complaint in this action, the plaintiff has filed a motion for preliminary injunction. (Doc. no. 5). In the motion, the plaintiff seeks an order enjoining the defendants from threatening or harassing him, from taking any action that exposes him to physical harm, and from obstructing or impeding his prosecution of this lawsuit. *Id*. at 9-10. In support of the motion, plaintiff alleges that he has been threatened with death or serious injury because of litigation he has filed or attempted to file against FCI Talladega staff. *Id*. at 20. As part of this alleged retaliation, the plaintiff states that meals were withheld, that he was housed in a "feces smeared environment for seven days," and that he was moved to a particular unit within the

prison where he was housed with a known enemy who has assaulted him in the past.[1] *Id*. at 4 and 20. The plaintiff alleges that during the month of November 2009 the other inmate made daily threats against him and he now believes he is in imminent danger because he is housed in such close proximity to a known enemy. *Id*. at 20-21.

On January 21, 2010, the plaintiff filed a second motion for preliminary injunction (doc. no. 16) in which he alleges that he continues to be in imminent danger. He states that he has been harassed as a result of this litigation, including the withholding of medications for high blood pressure and epilepsy, and has been refused examination or treatment for "heart palpitations, nausea and severe headaches." *Id*.

On December 15, 2009, defendants — Warden Constance Reese, Associate Wardens Becky Clay and J. Savidge, Unit Manager A. Bailey, Case Manager Terry Sumner, and Lieutenant W. Davis — were ordered to respond to plaintiff's initial motion for preliminary injunction, and on January 26, 2010, defendants were ordered to also respond to plaintiff's second motion for preliminary injunction. The defendants filed a response to these orders on February 3, 2010. (Doc. no. 18).

---

[1] The plaintiff states that Assistant United States Attorney Mike Schultz (S.D. Texas) has requested in writing that he be separated from the other inmate . (Doc. no. 5 at 2 and Doc. no. 1 at 4). Inmates who are designated to be separated from another inmate are called "separatees." (Doc. no. 22-1 at 3).

**DEFENDANTS' RESPONSE**

Defendants indicate that plaintiff is assigned to the Special Management Unit ("SMU") at FCI Talladega, which is a more restrictive living arrangement because it houses high security inmates from around the country who have been too disruptive for placement in the general population or even a Special Housing Unit.[2] (*See* doc. no. 22-1 at 2). According to the defendants, the SMU at Talladega is "plagued with continuous disruptions, including fires, floods, hostage situations, assaults, attempted mutilations, attempted suicides, destruction of property, and destruction of life safety devices." *Id*. at 2-3. Because of the continuous nature of these disruptions, "use of cell force teams may be required anywhere from two to five times a day." *Id*. at 3. The defendants point out that the plaintiff has been "a major part of the disruptions" during his stay at the Talladega SMU, including "taking his cell-mate hostage with a weapon and threatening to kill him, setting three cell fires, possessing a dangerous weapon, threats to inmates and staff [and] assault." (Doc. no. 18-5); *id*. at 3.

Defendants confirm that plaintiff is housed in the Talladega SMU along with a "separatee" with whom he should have no contact. (Doc. no. 22-1 at 3). However, they point out that the separatee, who arrived at Talladega subsequent to the plaintiff, is not allowed contact with the plaintiff, and that "extreme care and caution has been

---

[2] The plaintiff arrived in the Unit on August 6, 2009.

3

used to ensure these inmates do not come in contact with each other." *Id*. The defendants state that "anytime either inmate is out of his cell, the other is secured in his cell," and that all SMU inmates are handcuffed and escorted by a staff member when they are taken from their cells. *Id*. Defendants also state that, on November 24, 2009, plaintiff was moved farther from his "separatee," and the two now are housed on separate floors. *Id*.

With respect to plaintiff's allegation that he was housed in a "feces smeared environment," defendants explain that plaintiff was at one time housed near another inmate who contaminated his own cell, but not the plaintiff's cell. (Doc. no. 18-4 at 5). Defendants further state that, whenever an inmate contaminates his cell, it is "appropriately decontaminated," and that sanitation levels in the SMU are checked weekly by the Safety Department, department heads, and executive staff. Defendants deny as "totally false" plaintiff's allegation that they refused to clean a contaminated cell for seven days, and they point out that plaintiff is no longer housed near the other inmate who caused the contamination. *Id*. at 5-6.

Defendants also thoroughly address the plaintiff's allegation that he is being harassed as a result of his litigation activities, and that his legal materials have been confiscated as part of the harassment. Defendants acknowledge that the plaintiff has been unhappy with the restrictions, searches, and disciplinary actions that have

4

resulted from his continued failure to follow prison rules; however, they deny having threatened or harassed plaintiff, or having witnessed other staff threaten or harass him. (*See* doc. no. 18-14 at 5; doc. no. 22-1 at 5; doc. no. 18-5 at 7; doc. no. 18-4 at 7). They explain that plaintiff has been subjected to increased cell searches and confiscation of personal property, including legal property, as a result of having engaged in such activities as starting cell fires, taking a hostage, and possessing a weapon.[3] (Doc. no. 18-4 at 6). Defendants further explain that plaintiff's legal property has been confiscated only in situations where it might be used for other than its intended purpose, and they point out that, "where legal material is confiscated, the specific legal material that is pertinent to an ongoing case is returned within days of the confiscation." (Doc. no. 18-5 at 6).

Finally, defendants address plaintiff's allegation that certain medical care has been refused. In response to this claim, defendants submit the affidavit of Dr. William Holbrook, the Clinical Director at FCI Talladega. (Doc. no. 22-2). Dr. Holbrook testifies that plaintiff has a history of "Mental Health-Schizophrenia, hypertension and seizure disorder." *Id*. at 1. Because of his hypertension, plaintiff was placed in the Chronic Care Clinic program, which allows prisoners to be seen by

---

[3] The defendants indicate that plaintiff's "proven ability to set cell fires" by using batteries and other items passed to him by fellow inmates has made it necessary to limit his access to flammable materials, including legal property. (Doc. no. 22-1 at 4-5).

the Clinical Director every six months. *Id*. at 1-2. Additionally, members of the health services staff make daily rounds in the SMU to "dispense medications and attend those who have signed up for sick call." *Id*. at 2. Since his arrival at FCI Talladega, the plaintiff has been evaluated by Dr. Holbrook or other health services staff at least seventeen times. *Id*. at 2. Dr. Holbrook states that plaintiff's serious medical needs are "timely and appropriately addressed," and that the health services staff will continue to provide medical care and treatment for plaintiff in an appropriate manner. *Id*. at 2-3.

With respect to missed medications, Dr. Holbrook acknowledges there were two occasions on which plaintiff missed a normal medication dose. On the first occasion, October 21, 2009, the plaintiff claimed to have missed two doses of his seizure medications because his tray door had been jammed by another inmate. At that time, Dr. Holbrook personally visited the pharmacy in order to obtain the plaintiff's medication. *Id*. at 2. On the second occasion, January 12, 2010, the plaintiff's prescriptions for hypertension and epilepsy had expired, and Dr. Holbrook ordered a refill on that same day. *Id*. at 3.[4]

---

[4] According to Dr.Holbrook, monitoring the plaintiff's medical condition is complicated by the fact that he is non-compliant with his medications. (*See* doc. no. 22-2 at. 3). Dr. Holbrook states that his review of the Housing Unit Daily Log reflects at least 45 occasions on which the plaintiff either refused or "faked taking" his medications. (Doc. no. 22-2 at 3).

**PLAINTIFF'S RESPONSE TO DEFENDANTS' REPORT**

Plaintiff submitted a response to defendants' report on March 11, 2010, which included his own affidavit, the affidavits of two fellow inmates, and copies of various documents related to plaintiff's administrative remedy or grievance requests. (Doc. no. 25-1). Plaintiff's affidavit states, in pertinent part, that he has "been in contact" with his separatee (John Rousseau) during outdoor recreation on six occasions since September 2009. *Id*. at 3. He alleges that this contact was the result of the fact that two officers intentionally placed him in the recreation area with the other inmate.[5]

With respect to medical care, plaintiff cites two incidents in which one of the staff nurses "refused to provide [him] with blood pressure and epilepsy medication" (Doc. no. 25 at 3).[6] Contrary to Dr. Holbrooks' assertions, plaintiff denies ever having refused medications, but alleges that he has "been repeatedly denied routine medical care, including diagnostic testing and surgery" *Id*. at 3. These allegations

---

[5] Plaintiff provides no further detail regarding these alleged contacts. He does not state that the other inmate threatened or attacked him, nor does he make a showing that he was placed in undue danger during the six recreation sessions. It is also important to note that, contrary to plaintiff's history at FCI Talladega, the separatee "has not been a management problem" according to defendants. (Doc. 18-5 at 7; doc. no. 18-4 at 7). The obvious implication is that plaintiff may be more of a danger to the separatee than *vice versa*.

[6] One of the occasions cited by the plaintiff is January 12, 2010. As noted above, defendants explained that, on this date, plaintiff's prescription had expired, but was immediately renewed.

7

are presented in a vague and general way, however, and are unsupported by specific factual claims.[7]

Plaintiff does not directly address defendants' rebuttal of his claim that he was subjected to a contaminated cell for seven days. Alternatively, he now asserts the general premise that the SMU at Talladega is "extremely unsanitary," and is infested with roaches, ants, and mice. (Doc. no. 25-1 at 4). He complains that inmates are provided with "nothing but 1/4 cup general cleaning fluid per week to maintain sanitation." *Id*.

Finally, plaintiff supports his harassment claim by asserting that, prior to filing this lawsuit, his cell had only been searched twice, but that after he filed this action his cell "was subjected to searches on a nearly daily basis[,] in which staff would throw [his] legal papers about the cell and seize and detain his papers." (Doc. no. 25-1 at 4). In this regard, plaintiff also submits the affidavit of fellow inmate Shawn Cropp, who testifies that on one occasion in November of 2009, plaintiff's legal documents were seized during a contraband search. (Doc. no. 25-1 at 24).

---

[7] With regard to his medical claims, plaintiff submits the affidavit of inmate Edwin Guzman. (*See* doc. no. 25-1 at 22). Guzman states that he has only seen the medical staff examine plaintiff on one occasion and that he has "observed medical staff refuse to give plaintiff] his medication several times." *Id*. No dates, times, or other specific facts are submitted with these general statements. Additionally, the affidavit of inmate Shawn Cropp states that the prison staff has "denied [plaintiff] all access to the medical doctor lately as well as refusing to medicate him." (Doc. no. 25-1 at 24). As with inmate Guzman, these allegations are not supported by specific facts, and Cropp makes no showing as to how he would have personal knowledge of these alleged facts.

## FINDINGS

After thorough consideration of all of the pleadings and exhibits filed herein, the court concludes that plaintiff has not demonstrated the necessity of either a temporary restraining order or a preliminary injunction.[8] The issuance of a temporary restraining order is an extraordinary remedy to be granted only under exceptional circumstances. *Sampson v. Murry*, 415 U.S. 61 (1974). Motions requesting such relief must be evaluated under strict standards. *Martinez v. Mathews*, 544 F.2d 1233 (5th Cir. 1976). In this instance, defendants have shown that no exceptional circumstances exist which would justify the issuance of a temporary restraining order. Defendants' thorough response clearly shows that they have taken no actions that would place plaintiff in imminent danger of irreparable injury, and that to the extent he has been exposed to additional cell searches and disciplinary actions, they are in large part due to his own actions. Plaintiff's generalized responses are not sufficient to overcome the specific facts asserted by defendants in their report, and will not support the issuance of a temporary restraining order.

---

[8] Pending before the court is plaintiff's motion (Doc. no. 26) to strike the affidavit of Warden Constance Reese because it is unsigned. The court also notes that the FCI Talladega documents submitted with the defendants' report have not been authenticated by affidavit as business or governmental records exceptions to the hearsay rule. However, for purposes of the findings here, it was not necessary for the court to consider the affidavit of Warden Reese or any specific documents submitted by the defendants, apart from the properly executed affidavits cited herein. Accordingly, plaintiff's motion (doc. no. 26) is DENIED without prejudice.

A preliminary injunction is also an extraordinary and drastic remedy, the granting of which is the exception rather than the rule. *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983). The Eleventh Circuit has established the following four-factor test which must be met by the moving party in order to demonstrate the need for a preliminary injunction:

> To be entitled to injunctive relief, the moving party must establish that (1) there is a substantial likelihood that he ultimately will prevail on the merits of the claim; (2) he will suffer irreparable injury unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the public interest will not be harmed if the injunction should issue.

*Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir. 1983).

Based upon the showing made by defendants, the likelihood of plaintiff ultimately prevailing on the merits is not substantial. Additionally, defendants have rebutted any effort by plaintiff to show that he will suffer irreparable injury if the injunction is not granted. In the face of defendants' meticulous submission, it was incumbent upon plaintiff to provide specific facts which show he faces imminent and irreparable injury absent this court's intervention. He has failed to shoulder this burden. As defendants' response demonstrates, not only has plaintiff failed to show that he is in imminent danger, but many of the events of which he complains appear

to be either exaggerated or the result of his own choices and actions. Accordingly, plaintiff has failed in his burden to show that the extraordinary remedy of a preliminary injunction is warranted.

For the reasons stated above, plaintiff's motions for preliminary injunction (docs. no. 5 and 16) are due to be, and hereby are, DENIED.

The Clerk is DIRECTED to serve a copy of this order upon plaintiff and upon counsel for the defendants.

DONE and ORDERED this 31st day of August, 2010.

_____
United States District Judge