FILED

2013 Mar-08  PM 04:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

JEREMY PINSON,                       )
                                     )
               Plaintiff             )
                                     )
        vs.                          )        Case No.  1:09-cv-02379-CLS-HGD
                                     )
CONSTANCE REESE, et al.,             )
                                     )
               Defendants            )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Jeremy Pinson, filed this *pro se* action pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, alleging that he had been deprived of rights, privileges, or immunities afforded him under the Constitution or laws of the United States of America during his incarceration at the Federal Correctional Institution in Talladega, Alabama.  Named as defendants in the complaint are former Warden Constance Reese, Unit Manager Aubrey Bailey, Regional Director Raymond Holt, former Chief of the BOP Designation Sentence Computation Center Delbert G. Sauers, Case Manager Terry Sumner, Correctional Services Administrator Rufus Williams, and Warden John Rathman.  The plaintiff seeks nominal damages of $1.00 and injunctive relief.  In accordance with the usual

practices of this court and 28 U.S.C. § 636(b)(2), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136, 111 S. Ct. 1737, 114 L. Ed. 2d 194 (1991).

## CASE HISTORY

The long and complicated history of this matter is summarized in the opening paragraphs of the Order for Special Report (Doc. 50) and will not be repeated here. However, the matters leading directly to this Report and Recommendation are as follows.

On January 7, 2011, the court entered an Order for Special Report (Doc. 50) directing that copies of the complaint (Doc. 1) be forwarded to the defendants and requesting they file a Special Report addressing the plaintiff's factual allegations. The parties were advised that the Special Report, if appropriate, might be considered as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. Shortly thereafter, the plaintiff sought to supplement his complaint with the allegations set forth in his "Notice" filed January 19, 2011. (Doc. 51). Accordingly, the Order for Special Report was supplemented (Doc. 52) to the extent the defendants were directed to also address the allegations set forth in the plaintiff's

"Notice."[1]   On April 4, 2011, the defendants filed a Special Report accompanied by affidavits and certain Bureau of Prisons documentation.[2]   (Doc. 60).   The plaintiff filed an initial response to the defendants' Special Report on July 13, 2011.   (Doc. 70).   On October 6, 2011, the parties were notified that the court would construe the defendants' Special Report as a motion for summary judgment and the plaintiff was notified that he would have twenty (20) days to respond to the motion by filing affidavits or other material if he chose.   The plaintiff was advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56.   *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).   In response, the plaintiff filed a motion asking that his initial response to the Special Report (Doc. 70) be converted to his response to defendants' summary judgment motion.   That motion was granted on October 27, 2011.   Subsequently, the plaintiff was allowed to supplement his response with materials included in Doc. 76.   This matter is now before the court on the defendants' Special Report (Docs. 60, 62 & 18) being construed as a motion for summary judgment, and the plaintiff's responses thereto.   (Docs. 70 & 76).

---

[1]   That same order directed the defendants to also address the plaintiff's "Renewed Motion for Preliminary Injunction."  (Doc. 47).  That motion was denied by order dated September 9, 2011.  (Doc. 71).

[2]   The defendants' Special Report also incorporates their previous response (Doc. 18) to the plaintiff's motion for preliminary injunction.  (Doc. 60-3).  Additionally, the defendants were granted leave to supplement their response with the signed affidavits set forth in Doc. 62.

## SUMMARY JUDGMENT STANDARD

Because the special report of the defendants is being considered a motion for summary judgment, the court must determine whether the moving party, the defendants, are entitled to judgment as a matter of law.  Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  *Federal Rule of Civil Procedure 56.*  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law.

*See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530

(11th Cir. 1990).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a *prima facie* case.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted].  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

## PLAINTIFF'S FACTUAL ALLEGATIONS

At the time he filed the initial complaint herein, the plaintiff was an inmate in

the Special Management Unit (SMU) of the Federal Correctional Institution at

Talladega, Alabama.  He alleged that he was being housed near a known enemy, John

Rousseau, against whom he had cooperated with federal law enforcement in October

2008.[3]  (Doc. 1).  Rousseau is alleged to have been one of the inmates who

participated in an assault on the plaintiff in April 2008.  *Id*. at 3.  The plaintiff claims

---

[3]  The plaintiff contends that Raymond Holt, despite having knowledge of the plaintiff's cooperation with authorities, "reviewed and approved" the plaintiff's transfer to the Special Management Unit at FCI Talladega in April 2009.  The plaintiff was transferred to the unit in August 2009.  (Doc. 1, pp. 3-4).

he was assaulted because of his sexual orientation and because he had previously cooperated with law enforcement.[4]  *Id.* at 3.  Despite an alleged "separatee order" between himself and Rousseau, the plaintiff claimed he was housed two cells away from Rousseau, who had a history of violent acts, and that he was in danger of coming in contact with Rousseau during shower breaks or recreation times.  *Id.* at 5. He complains that Sumner, Bailey, Reese, and Williams were aware that he was in imminent danger from Rousseau and white supremacist gangs, but failed to take steps to protect him.  *Id.* at 4-5.

In the initial complaint, the plaintiff sought nominal damages of $1.00 and injunctive relief in the form of an order enjoining the defendants from housing him near an enemy inmate or using force to coerce him to accept a cellmate who might harm him.  He has since been transferred from Talladega to the U.S. Penitentiary in Florence, Colorado.

After entry of the Order for Special Report, the plaintiff sought to supplement his complaint with the allegations set forth in  his "Notice" filed January 19, 2011.

---

[4]  Defendant Sauer is identified as the Chief of the Bureau of Prisons Designation and Sentence Computation Center and allegedly is the "final decision-maker" with regard to an inmate's assigned institution. (Doc. 1, p. 3).  The plaintiff alleges that an un-named United States Attorney wrote a letter to Sauer in December 2008, asking that the plaintiff be kept separated from the inmates against whom he had cooperated with authorities, including inmate Rousseau.  *Id.* at 4.  Despite this request, the plaintiff alleges that Sauer approved his transfer to the SMU and subsequently approved Rousseau's transfer to the same SMU unit.  *Id.* at 4.

(Doc. 51).  In that pleading, the plaintiff sought to clarify his initial complaint by stating that the use of the term "known enemy" included "all inmates or gangs against whom [he] had cooperated in 2008." *Id*. at 1.  The plaintiff also alleged the additional claims that Rathman and Holt were aware that FCI Talladega staff members were coercing physical contact between known enemies, that defendant Sauer failed to act on a November 2009 request to transfer the plaintiff, and that Sumner and Bailey failed to classify the plaintiff as a former gang member which resulted in plaintiff's contact with known enemies.[5]  *Id*. at 2.  However, no additional demands for relief were asserted in that document.

## DEFENDANTS' SPECIAL REPORT

The defendants submitted their Special Report on April 4, 2011.  (Doc. 60).  Incorporated by reference into the Special Report is the defendants' previous response to the court's Order to Show Cause.  (Doc. 18).  The defendants state that the initial recommendation to refer the plaintiff to a Special Management Unit was made by staff at the United States Penitentiary in Coleman, Florida, and was

---

[5]  The plaintiff failed to submit any specific facts in support of these general contentions.  In any event, the defendants were instructed to include a response to these additional allegations in their Special Report.  *See* Doc. 52.

approved by the Warden at Coleman.[6]  (Doc. 60, p. 3; Doc. 60-3).  Once approved by the Warden, the recommendation is forwarded to the Designation Sentence Computation Center (DSCC) for the final determination.  Defendant Sauers formerly held the position of Chief over the DSCC at Grand Prairie, Texas.  (Doc. 60-4).  Defendant Holt is the Regional Director for the Bureau of Prisons Southeast Region.  (Doc. 60-5).  However, the defendants' Special Report states that neither Holt nor Sauers "personally reviewed or signed [the plaintiff's] SMU referral paperwork."  (Doc. 60, p. 3; Doc. 60-5, ¶ 3; Doc. 60-4, ¶¶ 3-5).

Upon his arrival at the Talladega SMU unit, the plaintiff continued his pattern of disruptive and dangerous behavior, including threats, assaults, fire setting, interference with security devices, destruction of property, and possession of a dangerous weapon.  (Doc. 60, p. 4; Doc. 60-6).  On June 25, 2010, the plaintiff was involved in a serious assault on an inmate and a staff member in the prison library.  The plaintiff, with the assistance of a another inmate, assaulted the inmate with fists and a sharp instrument, causing injuries serious enough to require hospitalization.  (Doc. 60-8).  During the assault, the plaintiff also injured a lieutenant who was

---

[6]  The Hearing Administrator's report and the Warden's SMU Referral Memorandum cite the plaintiff's "extensive disciplinary history" while at Coleman as the reason for the referral, including assault with serious injury, threatening bodily harm, fighting, and possession of a dangerous weapon.  (Doc. 60-3; Doc. 18-10, pp. 2-8).

attempting to intervene.  *Id*.  As a result of this incident, the plaintiff was transferred to Administrative Maximum Security Penitentiary at Florence, Colorado, on February 7, 2011.  (Doc. 60, p. 6; Doc. 60-7, p. 5, ¶ 12).

The defendants' Special Report specifically addresses the plaintiff's contention that he was in danger while housed in the Talladega SMU because of his proximity to enemies.  The defendants explain that a housing assignment, which deals with inmates who need to be separated from certain other inmates, is referred to as a Central Inmate Monitoring (CIM) Assignment.  According to BOP Program Statement #P5217.01, it is within BOP policy to house enemy inmates in the same SMU unit so long as it is a level one or two unit within the SMU program and so long as the CIM assignment is "related to SMU placement."  (Doc. 60, p. 7; Doc. 18-6, p. 5; Doc. 60-7, p. 3, ¶ 5).  The rationale behind this rule is based upon the fact that in level one and level two SMU units, the prison staff is able to prevent any physical contact between the enemy prisoners.  *Id*.[7]  The defendants affirm that FCI Talladega

---

[7]  Lieutenant Wilbert Davis testifies that contact between inmates in Level One facilities is "minimal."  (Doc. 18-16, p. 3).  Presumably referring to inmate Rousseau, Davis confirmed that one of the plaintiff's "separatees" was housed in the Talladega SMU, but stated that the plaintiff and the separatee had not been in contact with one another and that "extreme care and caution" is taken to ensure they remain separated.  *Id*. at 4.  Rufus Williams confirms that during the plaintiff's time in the Talladega SMU, he never came in contact with inmate Rousseau or any other inmate from whom he is "officially separated."  (Doc. 60-10, p. 4, ¶¶ 10-11).  Defendant Sumner states that the plaintiff and his separatee had not been in the same cell or recreation cage at any time.  (Doc. 18-15, p. 2).

houses only level one or two SMU inmates, and, therefore, "housing Rousseau and [the plaintiff] in the same Unit was within BOP regulation and policy." (Doc. 60, p. 8; Doc. #60-7, p. 3, ¶ 6). Former Warden Constance Reese confirms that neither inmate had contact with the other, nor did they have access to each other at any time. (Doc. 18-3, p. 5, ¶ 9).[8] Echoing Lieutenant Davis' testimony, Warden Reese states that "extreme care and caution" was used to ensure that the plaintiff and Rousseau did not come in contact with one another, that they were not allowed out of their cells at the same time, and that when they were removed from their cells they were handcuffed and escorted by a staff member. *Id.*[9]

In a pleading filed December 9, 2010, the plaintiff stated that inmate Rousseau had been transferred away from Talladega, but then alleged that he was in danger from being housed near other enemy inmates, including Allen Valenzuela, Donald Rourke, Clifton Hamalowa, Thomas Martinson, and Ronald Coleman. (Doc. 47).[10] The defendants confirm that inmate Rousseau was transferred away from Talladega on May 26, 2010. (Doc. 60, p. 8). They also confirm that the plaintiff filed an

---

[8] In fact, following the plaintiff's November 12, 2009, Administrative Remedy Appeal, in which he complained of being housed near Rousseau, the record reflects that Rousseau was moved further away from the plaintiff. (Doc. 60-20).

[9] Warden Rathman corroborates Reese's testimony. (Doc. 60-7, p. 3, ¶ 6.)

[10] These allegations were submitted by the plaintiff in a motion for preliminary injunctive relief, not in an amended complaint. The plaintiff's motion was denied by order dated September 9, 2011. (Doc. 71).

Administrative Remedy form seeking to be kept from inmates Valenzuela, Hamalowa, and Rourke because they had allegedly threatened him during recreation. *Id*.[11] However, the defendants assert that the plaintiff's allegations were investigated and found to be unsubstantiated. *Id*.[12] In any event, because of his own violent acts, the plaintiff was not allowed to have a cellmate or recreate with other inmates, and was kept in a secure area of the SMU.[13] (Doc. 60, p. 9; Doc. 62-1, p. 4, ¶ 13; Doc. 62-2, p. 5, ¶ 17). Defendant Williams confirms that although the plaintiff "was the aggressor in more than one assault" during his time at FCI Talladega, "he did not come in contact with any inmate whom he is officially separated from." (Doc. 60-10, p. 4, ¶ 11).

---

[11] The Administrative Remedy form submitted by the plaintiff to prison authorities on June 1, 2010, shows he complained about threats from Valenzuela, Rourke, and Hamalowa. There is no mention of inmates Martinson or Coleman on that form. (Doc. 60-12, p. 7). The plaintiff asks that he not recreate with the three inmates and that they not be assigned cells nearby.

[12] Lieutenant James Preston of the Special Investigation Section at FCI Talladega, testifies the he conducted a "Threat Assessment" of the plaintiff's concerns and "was unable to substantiate Pinson's claims." (Doc. 62-1, p.5, ¶ 15). Preston also testifies that the plaintiff's request to be placed into the Witness Protection Program was denied because he did not meet the criteria for the program. *Id*. There is no allegation that the plaintiff was ever injured by inmates Valenzuela, Hamalowa, or Rourke.

[13] Despite the plaintiff's contention that he faced a "substantial risk of harm" while housed at FCI Talladega, the defendants point out that he vigorously fought his transfer to Admax Florence and that he requested a cellmate. (Doc. 60, p. 11; Doc. 60-15; Doc. 60-16; Doc. 60-17; Doc. 60-18). Documents submitted by the plaintiff verify the defendants' assertions. (Doc. 70-3, pp. 21-22).

Finally, the defendants address the history of the plaintiff's attempts to file administrative remedies with respect to the claims herein.  In that regard, they submit the declaration of Janet Dickey, who is employed as the Warden's Secretary at FCI Talladega, and whose duty it is to log administrative remedies filed by inmates. (Doc. 60-11).   She testifies that federal inmates must pursue administrative remedies through a three-tiered process, which includes first filing a complaint with the Warden of the facility (BP-9), followed by an appeal to the Regional Director (BP-10), and then to the National Inmate Appeals Administrator, Office of General Counsel (BP-11).  *Id*. at 2-3.  Dickey confirms that her review of the Administrative Remedy Log shows that the plaintiff has exhausted his administrative remedies with respect to his request to be separated from inmate Rousseau (Remedy ID #559762) and inmates Valenzuela, Hamalowa, and Rourke. (Remedy ID #607310).  *Id*. at 3-5.  However, Dickey contends that the plaintiff failed to exhaust his administrative remedies with respect to his complaint that he was classified improperly and his request to be placed in the Witness Security Program, and states that she found no administrative remedy requests "specific to Terry Sumner, Aubray Bailey, Raymond Holt, Delbert Sauers, or Rufus Williams."  *Id*. at 5-6.

PLAINTIFF'S RESPONSE

The plaintiff argues that defendant Holt recommended his transfer to an SMU "despite documentary evidence submitted showing gangs would target [him]." (Doc. 70, p. 3).[14] He complains that after his transfer to the Special Management Unit at Talladega on August 6, 2009, defendants Sauers and and Holt allowed the transfer of inmate Rousseau and "other gang members" into the same unit. *Id.* He further alleges that under the supervision of Reese, Holt, and Williams, and as a result of the continued transfer of rival gang members into the unit, a "culture of violence" developed in the SMU. (Doc. 70-1, p. 16). According to the plaintiff, Sauers was "well aware of the separatee concerns, but continued to authorize transfers of enemies in the SMU[,] including inmate Rousseau."[15] *Id.*

------

[14] The plaintiff does not submit copies of this alleged documentary evidence. However, he does submit a copy of a May 28, 2009, Hearing Administrator's Report which outlines the plaintiff's "extensive disciplin[ary] history," including three (3) "Greatest Category" prohibited acts and twenty-one (21) "High Category" prohibited acts.

[15] As part of his response to summary judgment, the plaintiff attached copies of affidavits from several fellow inmates who testify regarding alleged threats made against him by staff members. (Doc. 70-2). However, there were no claims made in the complaint (Doc. 1) or the supplemental pleading (Doc. 51) regarding threats by staff, and they will not be considered here. In any event, it is well settled that allegations of verbal abuse or harassment by prison officials against a prisoner do not state a constitutional violation sufficient to form the basis for a claim under § 1983. *Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979); *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993); *Allen v. Stevens*, 2012 WL 4510866 at *2 (N.D. Fla. Sept. 10, 2012). Even threats of violence are not sufficient to invoke constitutional scrutiny where the threats are not actually carried out. *Hernandez v. Florida Department of Corrections*, 281 Fed.Appx. 862, 866 (11th Cir. June 9, 2008).

The plaintiff further alleges he spoke with Davis, Holt, Williams, and Reese about his safety concerns and "repeatedly" wrote Sauers about same during the period from August 2009 to January 2010.[16] (Doc. 70-1, p. 17).  When Rathman became Warden in February of 2010, the plaintiff advised him of his pending transfer request and asked him for permission to be housed alone in a cell. *Id.* at 18.[17]  Rathman allegedly refused the request, but instead forced the plaintiff into a cell with a "Sureno" gang member, compelling the plaintiff to rejoin the gang in order to avoid assault.  *Id.* at 18-19.  On this point, the plaintiff provides no specific facts which show that Rathman was aware that he was in any danger from this specific cellmate, nor does he allege that he was injured in any way by the cellmate.[18]

---

[16] The plaintiff alleges that Sumner submitted a request to Sauer in November 2009 for the plaintiff's transfer "because of safety concerns," but that but no action was taken on the request. (Doc. 70-1, p. 17).

[17] This allegation is directly contradicted by the Request for Administrative Remedy (#599829) filed by the plaintiff on July 10, 2010, in which he complains that he is being denied the opportunity to "recreate or be housed with other inmates" and specifically requests that he be "permitted a cellmate." (Doc. 60-19, p. 4).

[18] Typical of the convoluted and sometimes contradictory nature of the plaintiff's pleadings in this matter, his assertions that he was in danger from fellow inmates within the SMU seems contradictory to his December 17, 2009, Motion for Class Certification (Doc. 7) in which he seeks to be the class representative of "more than 100 current inmates of the Special Management Unit" for purposes of asserting claims alleging denial of adequate healthcare and outdoor exercise, and in which he alleges that he "has no interests antagonistic to those of the other class members." *Id.* at 4.  What is even more inexplicable is the plaintiff's January 4, 2010, Motion for Temporary Restraining Order (Doc. 14) in which he asserts a vigorous argument in support of his effort to enjoin his transfer *from* the Talladega Special Management Unit.  In support of this motion, the plaintiff argued that there was "no legitimate justification for [his] transfer" and that his transfer away from Talladega would constitute "actual injury."  *Id.* at 4-5.  As discussed herein, this is directly

The plaintiff attempts to assert that the June 25, 2010, incident in which he attacked another inmate in the prison library is an example of his need for protection. Without providing specific supporting facts, he vaguely asserts that he "knew an altercation was imminent in the SMU law library" and had "spent days warning Bailey and Rathman of the impending fight." (Doc. 70-1, p. 19). He says he armed himself in advance of being "forced together" with the other inmate in the library, but makes no plausible showing as to how or why his presence in the library on that occasion was involuntary, nor does he present facts which show that his actions on that day were in self-defense. *Id.*

## DISCUSSION

### Exhaustion of Remedies

Although the defendants acknowledge that the plaintiff eventually exhausted his administrative grievances with respect to his complaint that he was housed near known enemies Rousseau, Valenzuela, Hamalowa, and Rourke, it appears those remedies were not completed before the claims were presented in this action. The Prison Litigation Reform Act (PLRA) dictates that where administrative remedies are

---

contradictory to his argument that Sauers violated safety concerns by failing to act on the November 18, 2009, transfer request.

available to a prisoner, he must exhaust those remedies as a *pre-condition* to filing suit.  42 U.S.C. § 1997e(a); *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998). Additionally, this court does not have the discretion to waive the exhaustion requirements of § 1997.  *Alexander*, 159 F.3d at 1325-26.

The complaint in this action was filed on November 24, 2009.  However, it is undisputed that the administrative remedy asserted with respect to Rousseau (#559762) was not completed until May 3, 2010.  Therefore, that remedy was not fully exhausted prior to the complaint herein.[19]  Additionally, the administrative remedy asserted with respect to inmates Valenzuela, Hamalowa, and Rourke was not completed until February 15, 2011.  However, the allegations regarding these three inmates were submitted to the court on December 9, 2010.  (Doc. 47).  It is clear, therefore, that the plaintiff had not fully exhausted his administrative remedies prior to asserting those claims as well.[20]

The plaintiff argues that he previously exhausted his administrative remedies with regard to the claims in this action in remedies #472128 and #499251.  (Doc. 70,

---

[19]  "[P]roper exhaustion requires that a prisoner must *complete* the administrative review process in accordance with the applicable procedural rules, including deadlines, as a *precondition* to bringing suit in federal court." *Mason v. Bridger*, 261 Fed.Appx. 225, 228 (11th Cir. 2008); *quoting Woodford v. Ngo*, 548 U.S. 81 (2006).  (emphasis added) (internal quotation omitted).

[20]  This is true even if the January 19, 2011, date of the plaintiff's "Notice" (Doc. 51) is used as the reference point for purposes of the exhaustion issue.

p. 9).  He contends those remedies were completed on March 14, 2008, and October 17, 2008, respectively and that he "is not required to re-exhaust the same issues with each prison transfer to initiate suit." *Id*.[21]  However, since the record reflects that the plaintiff was not transferred to FCI Talladega until August of 2009, it is clear that those remedies were initiated and concluded at another prison *other than FCI Talladega* and therefore could not have been directed at the specific claims asserted here.  Since one of the purposes of the grievance process is to place the prison administration on notice of the problem and to give the administration the opportunity to resolve the issue without the need for litigation, it is axiomatic that the plaintiff cannot now claim exhaustion by referring to a grievance process that occurred at a wholly different location and ostensibly involved individuals other than those named as defendants in the complaint herein.[22]  *See Goebert v. Lee County*, 510 F.3d 1312, 1324 (11th Cir. 2007) ("the exhaustion requirement in the PLRA seeks to afford corrections officials time and opportunity to address complaints internally

---

[21]  The plaintiff fails to describe the specific claims asserted in those grievances and fails to point to a specific part of the record which might contain a photocopy of said grievances.

[22]  In fact, one of the cases cited by the plaintiff in his response addresses this very issue.  In *Howard v. Waide*, the plaintiff there had suffered assault and intimidation in two separate sections of the same prison.  However, the court found that the plaintiff's earlier grievances regarding risks to his safety in one section of the prison were not sufficient to "put prison officials on notice" of intimidation that occurred in another part of the prison some months later.  534 F.3d 1227, 1245 (10th Cir. 2008).

before allowing the initiation of a federal case") (internal quotations omitted) *quoting Woodford*, 548 U.S. 81 (2006).  The cases cited by the plaintiff in support of his contention are unpersuasive.  It is clear that those cases were decided under the particular circumstances presented therein and do not stand for a blanket policy of allowing previously submitted grievances to exhaust remedies for all similar and subsequent events.  In one such case, *Johnson v. Johnson*, the court plainly states:

> We pause to observe that we do not here hold that a grievance filed in response to one particular incident automatically exhausts claims that arise from future incidents of the same general type.  Thus, an inmate who claims to have been beaten by guards (or, for that matter, not protected by guards) once one month and again the next month can rightfully be expected to grieve both incidents.

385 F.3d 503, 521 n. 13 (5th Cir. 2004).

Although arguably the plaintiff eventually exhausted administrative remedies with respect to his failure to protect claims asserted in this action, the PLRA would have no teeth if a prisoner is allowed to file a suit prior to completion of the administrative remedy process and continue that suit at the same time he pursues administrative remedies.  It seems clear therefore that dismissal of an action is a proper sanction for failing to comply with the PLRA exhaustion requirements, even where the prisoner completes exhaustion during the pendency of the suit.  *See*

*Amador v. Florida Department of Corrections*, 2006 WL 1835797 (N.D. Fla. June 30, 2006) ("Even if plaintiff completes exhaustion after his case is filed, it is still subject to dismissal for failing to exhaust before suit was commenced"); *see also Harbin-Bey v. Rutter*, 420 F.3d 571 (6th Cir. 2005) ("prisoner may not exhaust administrative remedies during pendency of the federal suit"). Although our courts will quite often dismiss an action *without* prejudice in order to allow a plaintiff to exhaust his administrative remedies, under the circumstances presented here, the magistrate judge recommends dismissal *with* prejudice. Our courts have held that a dismissal with prejudice is appropriate where "administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." *Bryant v. Rich*, 530 F.3d 1368, 1375 n. 11 (11th Cir. 2008), *quoting Berry v. Kerik*, 366 F.3d 85, 87-88 (2nd Cir. 2004). It therefore seems clear that dismissal with prejudice is an appropriate sanction where, as here, the plaintiff is no longer incarcerated in the same prison in which the claims arose and any administrative remedies with respect to the particular claims are now unavailable. More importantly, as discussed below, the defendants are entitled to summary judgment on the merits of the plaintiff's failure to protect claim, for which dismissal with prejudice is also appropriate.

**Failure to Protect Claim**

To the extent the plaintiff's complaint can be read as asserting a claim based solely on his transfer to the Talladega SMU unit, the claim is without merit. It is clear that a prisoner has no constitutional right to be housed in a particular institution. *Montayne v. Haymes*, 427 U.S. 236, 242-43 (1976). Therefore, the plaintiff's constitutional rights were not violated merely because he was moved to a less desirable prison setting. In this instance it appears the plaintiff would have the federal court intervene in the unenviable task of deciding the appropriate location to house inmates within the federal prison system. However, contrary to the plaintiff's wishes, it is simply not appropriate for the court to become "enmeshed in the minutiae of prison operations." *Hamm v. Dekalb County*, 774 F.2d 1567, 1573 (11th Cir. 1985); *Bell v. Wolfish*, 441 U.S. 520, 562 (1979) and *Jones v. Diamond*, 636 F.2d 1364, 1368 (5th Cir. 1981).[23]

---

[23] For these same reasons, the plaintiff's related claim that defendant Sauers failed to act on a November 2009 request for transfer is also without merit. (Doc. 51, p. 2). "[A]n inmate has no liberty interest in a particular classification, prison assignment, or transfer even if the inmate loses access to rehabilitative programs and experiences more burdensome conditions than before." *Solliday v. Federal Officers*, 413 Fed.Appx. 206, 210 (11th Cir. 2011), *citing McKune v. Lile*, 536 U.S. 24, 39 (2002). More importantly, as mentioned above, this claim is belied by the plaintiff's motion for temporary restraining order (Doc. 14) asserted on January 4, 2010, and in which he sought an order enjoining the defendants from transferring him *away* from FCI Talladega. In that motion, the plaintiff stated that "[t]here is no legitimate justification for plaintiff's transfer as it contravenes the Bureau of Prison's policies and is clearly a retaliatory act which must be enjoined" *Id*. at 4. At that point, Rousseau was still an inmate in the SMU unit at Talladega. (Rousseau was transferred from FCI Talladega in May 2010). (Doc. 60-7, p. 4 ¶ 8).

In addition to his original allegation that he was housed near inmate Rousseau, the plaintiff "clarified" his complaint on January 19, 2011, by asserting additional allegations in Doc. 51 as described above, including that he was housed near gang members who had previously assaulted him, that Rathman and Holt were aware of staff members coercing physical contact with known enemies, and that Sumner and Bailey failed to classify the plaintiff as a gang member.  Taken as a whole, the gist of the plaintiff's various allegations is that the defendants failed to properly protect him.  On this point, the defendants are entitled to summary judgment.

Although prison officials have a duty to protect inmates from violence by other prisoners, they are not the guarantors of a prisoner's safety.  *Morgan v. Toombs Co., GA.*, 400 F.3d 1313, 1321 (11th Cir. 2005).  The Eighth Amendment is violated only when a prisoner is incarcerated under conditions which expose him to a "substantial risk of serious harm" and only when prison officials are "deliberately indifferent" to that risk.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "Deliberate indifference describes a state of mind more blameworthy than negligence" and, therefore, ordinary lack of due care for a prisoner's interest or safety will not support an Eighth Amendment claim.  *Id*. at 835.  Prison officials cannot be liable under the Eighth Amendment unless they know of and disregard an excessive or substantial risk to inmate health or safety.  *Id*. at 837.

In this instance, the defendants have submitted factual testimony which establishes that the plaintiff was protected from *known* enemies during his entire time at FCI Talladega.  It is undisputed that the plaintiff never came in contact with inmate Rousseau and that his allegations regarding danger from Valenzuela, Hamalowa, and Rourke were investigated and found to be groundless.[24]  He cites no other specific persons from whom he should have been protected, and fails to refute Lieutenant Williams' showing that he "never came in contact with any inmate with whom he is officially separated."  (Doc. 60-10, p. 4, ¶ 11).  Although the plaintiff references an altercation with a cellmate on November 4, 2009, and another altercation in the law library on June 25, 2010, he fails to present specific facts which show that the other inmates involved were known enemies, nor does he make a plausible showing that any of the defendants were aware of and disregarded a specific danger in connection with those events.[25]

For purposes of an Eighth Amendment claim, the plaintiff must show subjective intent on the part of prison officials.  In other words, he must present facts

---

[24]  Lieutenant Preston's testifies that he was never notified of any danger from inmates Martinson or Coleman.  (Doc. 60-15, p. 4, ¶ 10).  The plaintiff fails to dispute Preston's testimony.

[25]  Additionally, the plaintiff's use of the June 25, 2010, incident, in which he and an accomplice assaulted another inmate in the law library with a weapon, is perplexing.  It seems clear that an incident in which the plaintiff was the aggressor cannot form the basis of his failure to protect claim.  *See Santiago v. Walls*, 599 F.3d 749, 768 (7th Cir. 2010).

which show that a particular official was not only aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, but also that the official drew that inference. *Farmer*, 511 U.S. at 837. Therefore, "an official's failure to alleviate a significant risk that he should have perceived, but did not," is not sufficient to establish constitutional liability. *Id*. at 838. Accordingly, because only the "unnecessary and wanton infliction of pain" violates the Eighth Amendment, the plaintiff is required to present facts which demonstrate a "sufficiently culpable state of mind" on the part of the defendants. *Farmer*, 511 U.S. at 834. In the incidents cited by the plaintiff in his response to summary judgment, he presents nothing to specifically show that any of the defendants knowingly or recklessly allowed him to be placed in a situation where he would be harmed.[26] Absent such a showing, he has failed to demonstrate deliberate indifference on the part of the defendants, a required element of an Eighth Amendment claim.[27] The magistrate judge therefore finds that

---

[26] In his response, the plaintiff cited a third incident which also fails to further his claims here. He states that "[o]n January 9, 2011, Mr. Davis escorted me to a cell where an inmate proceeded to attempt to stab me." These limited facts are not sufficient to assert a claim for failure to protect. An Eighth Amendment claim cannot be predicated upon a random act, and prison officials do not become liable merely because they are ultimately unsuccessful in averting harm. *Farmer*, 511 U.S. 844.

[27] Even if the plaintiff had sufficiently presented a genuine issue of fact with respect to the claims asserted, his request for injunctive relief would be moot in light of his transfer from FCI Talladega. *O'Shea v. Littleton,* 414 U.S. 488, 495-96 (1974); *Wahl v. McIver*, 773 F.2d 1169 (11th Cir. 1985).

there is no genuine issue of fact or material fact with respect to the plaintiff's claims in this action, and the defendants are entitled to judgment as a matter of law.

### RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

Accordingly, for the reasons stated above, the magistrate judge **RECOMMENDS** that the defendants' special report be treated as a motion for summary judgment and, as such, that it be **GRANTED** and this action **DISMISSED WITH PREJUDICE**.

Any party may file specific written objections to this report and recommendation within fourteen (14) days from the date it is filed in the office of the Clerk. Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. Objections not meeting this specificity requirement will not be considered by a district judge. A copy of the objections must be served upon all other parties to the action. Frivolous, conclusive, or general objections will not be considered by the District Court. Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fifteen (15) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal except upon grounds of plain error or manifest injustice.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is **DIRECTED** to serve a copy of this report and recommendation upon the plaintiff and upon counsel for the defendants.

DONE this 8th day of March, 2013.

_____
HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE